IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MENDEZ INTERNET MANAGEMENT
SERVICES, *et al.*,

      **Plaintiffs,**

           **v.**                **Civil No.** 09-1667 (FAB)

THE BANKERS ASSOCIATION OF
PUERTO RICO, *et al.*,

      **Defendants.**

OPINION AND ORDER

BESOSA, District Judge.

Before the Court are the motions to dismiss filed by defendants Oriental Bank & Trust ("Oriental"), the Bankers Association of Puerto Rico ("BAPR"), Jose Rivera ("Rivera"), and Scotiabank de Puerto Rico ("Scotiabank"). (Docket Nos. 21, 25, & 26.) Having considered the arguments contained in those motions and plaintiffs' opposition, the Court **GRANTS** the motions to dismiss, (Docket Nos. 21, 25, & 26) and **DISMISSES plaintiffs' federal claims, with prejudice, and their state law claims without prejudice.**

Civil No. 09-1667 (FAB)                                            2

I.    **Background**

    A.    **Procedural Background**

        On July 15, 2009, plaintiffs Mendez Internet Management

Services, Inc. ("MIMS"), James Mendez ("Mendez"), Maribel Chavez

("Chavez") and the conjugal partnership formed between them, filed

a complaint against BAPR, Oriental, Ivette del Valle ("del Valle"),

Scotiabank, and Rivera.  (Docket No. 1.)  The complaint alleges

claims   pursuant   to   the   Racketeer   Influenced   and   Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962, the Sherman Act, 15

U.S.C. § 1, the Bank Holding Company Act ("BHCA"), 12 U.S.C. §

1972, and Articles 1802 and 1803 of the Puerto Rico Civil Code,

P.R. Laws Ann. tit. 31, §§ 5141-5142.  Id.

        On February 1, 2010, Oriental filed a motion to dismiss

pursuant  to  Federal  Rule  of  Civil  Procedure  12(b)(6)  ("Rule

12(b)(6)") arguing:  (1) that plaintiffs' claims are precluded by

the prior disposition of similar claims brought by plaintiffs in

Mendez  Internet  Management  Services,  Inc.,  et al.  v.  Banco

Santander de Puerto Rico, et al., 08-2140 (JAF) ("MIMS I"); (2)

that plaintiffs lack standing to bring their claims; and (3) that

plaintiffs  have  failed  to  state  a  claim  with  regard  to  their

federal causes of action.[1]   (Docket No. 21.)   On the same date,
BAPR filed a motion to join Oriental's motion to dismiss, which
also independently argued that plaintiffs had failed to state a
claim upon which relief could be granted.   (Docket No. 25.)
Scotiabank and Rivera filed a similar motion.   (Docket No. 26.)

        After receiving leave from the Court to do so, plaintiffs
filed an amended opposition to all three motions to dismiss on
March 22, 2009.   (Docket No. 40.)   In that opposition, plaintiffs
argue:  (1) that there is not sufficient identity of the parties
between this case and Civil No. 08-2140 to justify the application
of claim preclusion; (2) that injury to plaintiffs' property rights
created the standing necessary to bring their claims; and (3) that
they had alleged sufficient facts to survive a motion to dismiss
pursuant to Rule 12(b)(6).   Id.   Oriental, Scotiabank, Rivera, and
BAPR subsequently filed replies to plaintiffs' opposition.   (See
Docket Nos. 71, 73, 80 & 81.)

---

        [1] In MIMS I, MIMS and Mendez brought similar RICO, BHCA, Sherman
Act, and local law claims against other banking institutions, which are
alluded to in the present complaint and plaintiffs' opposition to the
motions to dismiss.   (See Docket Nos. 1 & 40.)   Those banking
institutions prevailed on a motion to dismiss pursuant to Rule 12(b)(6).
The relevant opinion and order dismissed MIMS and Mendez's federal
claims with prejudice and declined to exercise supplemental jurisdiction
over the local claims.   This result was later affirmed by the First
Circuit Court of Appeals.

### B.   Factual Allegations in the Complaint

MIMS is a corporation organized pursuant to the laws of the Commonwealth of Puerto Rico.  It is dedicated to the trade of Iraqi dinars.[2]  (Docket No. 1 at ¶ 3.)  Mendez is the president and owner of MIMS.  Id. at ¶ 4.  Chavez is its vice president.  Id. BAPR is a corporate entity organized pursuant to the laws of the Commonwealth of Puerto Rico and which is dedicated to the representation of banking institution members and their interests before the government and private citizens.  Id. at ¶ 6.  Member banking institutions include Bancolombia, Banco Popular de Puerto Rico, Banco Santander PR, Banco Bilbao Vizcaya Puerto Rico, Banesco, Citibank NA, Doral Bank, Eurobank, First Bank de Puerto Rico, Oriental, R-G Premier Bank, and Scotiabank.  Id.  Oriental is a corporate entity organized pursuant to the laws of the Commonwealth of Puerto Rico and is dedicated to banking services. Id. at ¶ 7.  Del Valle is the Manager of Oriental's Bayamon Branch. Id. at ¶ 8.  Scotiabank is a corporate entity organized pursuant to the laws of the Commonwealth of Puerto Rico and is dedicated to

---

[2] The complaint describes dinars as "a financial instrumentality which is not in the international market and is classified as a commodity with zero value outside of [Iraq] . . . , [but] can be validly traded in internet commerce."  (Docket No. 1 at ¶ 3.)

banking services. Id. at ¶ 9. Rivera is an official of Scotiabank. Id. at ¶ 10.

Plaintiffs allege that on or before August 11, 2009, Scotiabank and Oriental high ranking executives met with high ranking executives of other banking institutions and with BAPR officers. Id. at ¶ 22. A directive was issued, and/or an agreement was reached, to deny plaintiffs banking services fraudulently, using any subterfuge to support those actions. Id. Plaintiffs further allege that defendants formed an enterprise with other Bankers Association member banks to deny plaintiffs' banking services in Puerto Rico fraudulently, and to affect plaintiffs' business adversely. Id.

Mendez is the depositor and sole owner of the funds in Scotiabank account 161883. Id. at ¶ 23. Mendez and Chavez have also opened bank accounts with Oriental as part of their private lives to conduct day to day personal business. Id. at ¶ 24. Transactions applied to the referenced accounts include but are not limited to: payment of the mortgages on the conjugal home and a second residential property owned by the couple; credit card payments; payment of utilities for both residential properties; payment of direct dependent private schools; donations to religious

and private charities; and the deposit of salaries and wages derived from their work.  Id.

Chavez is the depositor and sole owner of the funds deposited in Oriental Checking account 1512501939 and in Oriental savings account 1522501930.  Id. at ¶ 25.  Mendez is the depositor and sole owner of the funds in Oriental account 2769146566.  Id. at ¶ 26.  On August 11, 2008, Oriental issued a letter by means of which Chavez was informed that her accounts would be closed in the next thirty days.  Id. at ¶ 27.  The letter was signed by Ortiz and sent via the United States Postal Service ("USPS").  Id.  The reason stated in the letter for the closure of the account was that the account was used for commercial transactions in violation of the Deposit Account Agreement.  Id.  Plaintiffs allege that the reason for closing the account was false and merely a subterfuge to hide Oriental's actions in furtherance of the enterprise and to deny plaintiffs banking services fraudulently.  Id.  Chavez filed a petition for injunction against Oriental in Commonwealth court. Id. at ¶ 28.  She requested an order to keep Oriental from closing plaintiffs' accounts.  Id.  The Commonwealth court issued a permanent injunction on August 28, 2008.  Id.  Pursuant to the injunction order, to close Chavez's accounts, Oriental would be

required to show cause and allow her to provide evidence as to why her accounts should not be closed.  Id.

On February 6, 2009, Oriental issued a letter by means of which Mendez was informed that his account would be closed in the next thirty days.  Id. at ¶ 29.  Oriental then closed the account as notified.  Id.  The letter was sent via the USPS.  Id.  The reason stated in the letter for the closure of the account was that the account was used for commercial transactions for an MSB registered with the Banking Institutions Commissioner of Puerto Rico in violation of the Deposit Account Agreement.  Id. Plaintiffs allege that the reason for closing the account was false and merely a subterfuge to hide Oriental's actions in furtherance of the enterprise and to deny banking services to plaintiffs fraudulently.  Id.

On February 5, 2009, Oriental again issued a letter of intent to close Chavez's accounts.  Id. at ¶ 30.  This time, Oriental alleged that the funds deposited in Chavez's accounts belonged to an MSB business and were used in MSB transactions.  Id. Oriental further alleged that the accounts' address was the same as the address for an MSB business regulated by the Puerto Rico Commissioner of Financial Institutions.  Id.  The letter was sent via the USPS.  Id.  Plaintiffs allege that, like other letters

received regarding account closures, the reason for closing the account was false and merely a subterfuge to hide Oriental's actions in furtherance of the enterprise and to deny banking services to plaintiffs fraudulently.  Id.  Chavez replied to Oriental's letter on April 1, 2009, with evidence that supposedly contradicted Oriental's allegations.  Id. at ¶ 31.  On June 5, 2009, Oriental closed Chavez's account.  Id.

On March 16, 2009, Mendez attempted to deposit a check into his account with Scotiabank at its Plaza Guaynabo branch.  Id. at ¶ 32.  He was questioned by Rivera as to the origin of the funds he wished to deposit.  Id.  Mendez indicated that the funds were originated from the sale of dinars.  Id.  Rivera informed him that the bank would not receive funds originating from the sale of dinars.  Id.

At different times MIMS, Mendez, and Chavez have opened other banking accounts with several banking institutions.[3]  Id. at ¶ 33.  Other banking institutions not named in this complaint have refused to open, or have closed accounts, for the plaintiffs because the banks' policies allegedly discourage servicing money

---

[3] At this point in their factual allegations, plaintiffs incorporate by reference all factual allegations contained in the MIMS I complaint and identify "other banking institutions" as those named as defendants in that complaint.  See id. at ¶¶ 33-36.

service businesses.  Id.  Plaintiffs allege that defendants have forged a *de facto* conspiracy and alliance with other banking institutions not named in this complaint, effecting the denial of banking services to the plaintiffs.  Id. at ¶ 35.  This conspiracy is alleged to be motivated by the common goal of discontinuing the operations of MIMS as an entity that sells dinars within the Commonwealth of Puerto Rico.  Id.

Plaintiffs allege that ranking officials or executives of Oriental and Scotiabank met with ranking officials and executives from other banking institutions named in MIMS I between September 2007 and March 2009 at the principal offices of the BAPR.  Id. at ¶ 36.  During those meetings, plaintiffs allege that it was agreed to deprive plaintiffs of defendants' banking services, and the services of other banking institutions.  Id.  They further allege that defendants have deprived plaintiffs of, or interfered with plaintiffs use of, financial services in furtherance of that conspiracy for the purpose of discriminating against plaintiffs because they promote and sell dinars.  Id. at ¶ 38, 44.

## II.  Legal Analysis

### A.   Rule 12(b)(6) Standard

Rule 12(b)(6) provides a vehicle for defendants to request the dismissal of a case or claims for failure to state a

claim upon which relief may be granted.  To adjudicate a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint or, as in this case, the amended complaint.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citations omitted).  These allegations are viewed through the prism of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Rule 8 exists to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

To comply with Rule 8, a complaint need not include "detailed factual allegations" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 555) (additional citation omitted). The factual allegations must "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citations omitted). Complaints that offer "labels," "conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" fail to rise above the speculative level.  <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Twombly</u>,

550 U.S. at 555.  To survive a motion to dismiss, a complaint must allege factual matter that states a "claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Furthermore, where a complaint alleges "fraud or mistake," those allegations "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).

## B.    Claim Preclusion

"Federal claim preclusion law applies to determine the preclusive effect to be given a prior federal court judgment." Airframe Systems, Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010) (citing Coors Brewing Co. v. Mendez-Torres, 562 F.3d 3, 8 (1st Cir. 2009)).  This body of law precludes "parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." Id. (citing Federated Dep't. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  Doing so discourages "gamesmanship" and shields both parties and the judicial system from the high cost of unnecessary and duplicative litigation. Id.  This doctrine is "especially implicated in a case like this [one], where the plaintiff had every opportunity to litigate fully its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so.  Plaintiffs cannot obtain a second chance at a different

outcome by bringing related claims against closely related defendants at a later date." Id.

"Claim preclusion applies:  (1) if the earlier suit resulted in a final judgment on the merits, (2) if the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) if the parties in the two suits are sufficiently identical or closely related." Id. (citing Negron-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 10-11 (1st Cir. 2008); Apparel Art Int'l., Inc. v. Amertex Enter., Ltd., 48 F.3d 576, 583-84 (1st Cir. 1995)).  There is no serious dispute as to whether there was a final judgment on the merits in MIMS I, given that all federal claims in that case were dismissed for failure to state a claim.  See id. (citing AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005)).  The Court will consider the remaining two elements of the claim preclusion analysis.  For the reasons described below, the Court finds those elements to be satisfied and claim preclusion to be appropriate in this case.  For that reason, plaintiffs' federal claims are **DISMISSED WITH PREJUDICE.**

### 1.    Identity or Relatedness of the Causes of Action

"This court uses a transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes." Id.  "A

'cause of action' in this context includes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" Id. (quoting United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998)). Making this determination "boils down to whether the causes of action arise out of a common nucleus of operative facts," regardless of the manner in which plaintiffs style their claims. Id. (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 38 (1st Cir. 1998)). Factors to be considered include: (1) "whether the facts are related in time, space, origin or motivation[;]" (2) "whether [those facts] form a convenient trial unit[;]" and (3) "whether treating them as a unit 'conforms to the parties' expectations.'" Id. (quoting Restatement (Second) of Judgments § 24 (1982)).

        There is little difference between the claims alleged in MIMS I and the claims alleged in this case. In fact, with only few exceptions, the cases' respective complaints are identical. (See Docket No. 1.) Both revolve around an alleged conspiracy by banks within Puerto Rico to drive MIMS and Mendez out of business by denying his company, or those related to his company, access to banking services. See id. Both allege claims pursuant to RICO, the Sherman Act, the Bank Holding Act, and

Articles 1802 and 1803 of the Puerto Rico Civil Code. See id. The relatedness of the facts between the two cases is further illustrated by plaintiffs' apparent inclusion of the MIMS I defendants as co-conspirators with the defendants in this case, as well as plaintiffs' attempt in this complaint to incorporate by reference the MIMS I complaint in its entirety. (See Docket No. 1 at ¶¶ 33-36.)

Plaintiffs' opposition to the motions to dismiss confirms this interpretation of the facts alleged in both complaints, as they attempt to create a factual background independent of the allegations in the complaint, incorporating the allegations in the MIMS I complaint and additional facts not alleged in either complaint, and argue that the defendants from both cases organized to form a single conspiracy determined to stamp out the sale of dinars by MIMS and Mendez. (See Docket No. 40.) Thus, even by plaintiffs' own estimation, there is a close relationship between the factual allegations and claims contained in the complaints of both this case and MIMS I. Both appear to involve a common conspiracy by several banks to deny plaintiffs' banking services fueled by the same motivation, i.e., to affect the sale of dinars conducted by MIMS and Mendez negatively. (See Docket No. 1.) The only substantial difference

between <u>MIMS I</u> and this case is that plaintiff chose to sue some of the members of that conspiracy in the former case, and others in the latter.  <u>See</u> <u>id</u>.  Considering the factors outlined above and the particular factual circumstances alleged in each case, the Court finds that the causes of action in this case and <u>MIMS I</u> are sufficiently related so as to originate from "a common nucleus of operative facts".  <u>See</u> <u>Airframe Systems, Inc.</u>, 601 F.3d at 14.

### 2.   Identity or Relatedness of the Parties

"Claim preclusion does not merely bar a plaintiff from suing the same defendant for the same claims in a different action; under certain circumstances, a defendant not a party to an original action may also use claim preclusion to defeat the later suit."  <u>Airframe Systems, Inc.</u>, 601 F.3d at 14.  "[P]rivity is a sufficient but not necessary condition for a new defendant to invoke a claim preclusion defense."  <u>Id</u>.  "[C]laim preclusion applies if the new defendant is 'closely related to a defendant from the original action-who was not named in the previous law suit,' not merely when the two defendants are in privity."  <u>Id</u>. (citing <u>Negron-Fuentes</u>, 532 F.3d at 10).  One particularly relevant example of such a close relationship is "where some alleged conspirators are sued in the first (unsuccessful) action and the remainder in a second suit based on the same allegations . . . ."

Civil No. 09-1667 (FAB)                                             16

Negron-Fuentes, 532 F.3d at 10 (citing Gambocz v. Yelencsics, 468
F.2d 837, 841-42 (3d Cir. 1972)).   "[T]his has usually occurred
where the claims were or could have been brought against the
original defendant in the original suit."   Id.

In stark contrast to the majority of other arguments
contained in their opposition, plaintiffs argue that there is not
a sufficiently close relationship between the defendants of this
case and those named in MIMS I to justify the application of claim
preclusion.   (See Docket No. 40 at 33-35.)   They support their
argument by focusing on the use of different internal policies by
each defendant allegedly used as pretexts to deny banking services
to persons related to MIMS.   See id.   Plaintiffs focus on those
different policies, however, while still highlighting the
conspiracy between banking institutions in Puerto Rico and arguing
that each bank only used their respective internal policy to hide
their true motivation, which was the furtherance of that
conspiracy.   See id.   This argument is at odds with the allegations
of the complaint specifically connecting the defendants in this
case to the conspiracy alleged in MIMS I, including incorporation
of the factual allegations in the MIMS I complaint.   (See Docket
No. 1.)   Plaintiffs' argument also runs contrary to the substantial
efforts in their opposition to connect the defendants in this case

with the defendants in MIMS I in "the larger enterprise conformed by the eight (8) Puerto Rico leading banks," which factors into nearly every other section of that opposition.  (See, e.g., Docket No. 40 at 43.)

        Regardless of whether defendants may have relied on unique or individual internal policies to justify their actions, plaintiffs specifically allege, and fervently argue in their opposition, that the defendants in both this case and MIMS I were involved in the same conspiracy, taking joint action motivated by a common desire to deter MIMS's and Mendez's sale of dinars.[4]  (See Docket Nos. 1 & 40.)  Plaintiffs' bizarre emphasis on the various internal policies of defendants does nothing to undermine the connection formed by the alleged conspiracy.  (See Docket No. 1.) Plaintiffs  simply  cannot  escape  the  close  conspiratorial relationship which appears to be the linchpin of their federal claims.  (See Docket Nos. 1 & 40.)  Given no basis in the factual allegations  of  either  complaint  to  isolate  the  respective

_____

        [4] Significantly, the conspiratorial activity alleged in this case occurred while MIMS I was still active, with only one exception.  (See Docket No. 1 at ¶¶ 25-31.)  Even that exception, the eventual closing of Chavez's account with Oriental, was simply the conclusion of a process prompted by Oriental prior to the filing of the complaint in MIMS I.  See id.  Plaintiffs have given no convincing reason as to why the claim in this case could not have been, or were not, pursued in MIMS I.  (See Docket No. 40.)

defendants in this case and <u>MIMS I</u> from the common conspiracy alleged by plaintiffs, the Court finds those defendants to be "closely related" for the purposes of claim preclusion.[5]  <u>See</u> <u>Negron-Fuentes</u>, 532 F.3d at 10 (citing <u>Gambocz</u>, 468 F.2d at 841-42).

**B.   Supplemental Claims**

The jurisdictional basis to maintain plaintiffs' claims pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code in this Court has been undermined by the dismissal of their federal claims.  Accordingly, those supplemental Commonwealth claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

---

[5] Plaintiffs make no argument regarding the effect of Chavez's presence in this case on the identity or relatedness of parties for the purposes of claim preclusion.  (<u>See</u> Docket No. 40.)  Given the traditional reluctance to extend claim preclusion to nonparty plaintiffs, <u>see</u> <u>Taylor v. Sturgell</u>, 553 U.S. 880, 894-895 (2008), the presence of an additional plaintiff could potentially defeat the application of that doctrine.  In the particular circumstances of this case, however, it does not.  Chavez's claims appear to be derived solely from her relationship with MIMS and Mendez.  (<u>See</u> Docket Nos. 1 & 40.) Plaintiffs confirm the derivative nature of Chavez's claims in their opposition, identifying the basis of her claims as property rights afforded her by the Puerto Rico "conjugal partnership" in her husband's dinar selling business.  (<u>See</u> Docket No. 40 at 39.)  In light of the dependence of her claims on rights associated with MIMS and Mendez, who were both parties in MIMS I, Chavez's presence in this case poses no barrier to claim preclusion.  <u>See</u> Taylor, 553 U.S. at 894-95 (recognizing circumstances in which "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interest who [wa]s a party' to the suit.").

### III. Conclusion

For the reasons described above, the motions to dismiss filed by Oriental, BAPR, Scotiabank, and Rivera, (Docket Nos. 21, 25, & 26), are **GRANTED.** Plaintiffs' federal claims are **DISMISSED WITH PREJUDICE.** Plaintiffs' supplemental Puerto Rico law claims are **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 3, 2011.

s/ FRANCISCO A. BESOSA
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE